UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DONNA MARTINEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>        Defendant. | CV-15-3005-FVS<br><br>ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT |

   **THIS MATTER** comes before the Court based upon the parties' cross motions for summary judgment.  The plaintiff is represented by Cory J. Brandt.  The defendant is represented by Jeffrey R. McClain.  For the reasons set forth below, the plaintiff's summary judgment motion is denied and the defendant's is granted.

   **JURISDICTION**

   On November 23, 2011, Donna Martinez applied for Title II disability insurance benefits ("DIB").  She alleges that, by November 1, 2011, she had become

Order ~ 1

disabled.  (TR 10.)  The Social Security Administration ("SSA") denied her initial application, together with her request for reconsideration.  On October 25, 2012, she asked for review of the SSA's decision by an Administrative Law Judge ("ALJ").  She also applied for Title XVI supplemental security income ("SSI").  *Id.*  The SSA scheduled an administrative hearing for July 31, 2013, and "escalated" her Title XVI claim "to the hearing level," *id.*, so that both her Title XVI claim and her Title II claim were addressed at the hearing; a proceeding in which both Ms. Martinez and her attorney participated.  *Id.*  In the end, Ms. Martinez was unable to persuade the ALJ.  On October 25, 2013, she ruled Ms. Martinez is not disabled for purposes of either Title II or Title XVI.  Ms. Martinez asked the Appeals Council to review the ALJ's decision, but, on December 15, 2014, the Appeals Council decided not to do so.  At that point, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).  Ms. Martinez commenced this action on January 7, 2015.  42 U.S.C. §§ 405(g), 1383(c).  Both she and the Commissioner move for summary judgment.

**BACKGROUND**

Donna Martinez was born on November 28, 1962.  (TR 284.)  Over the years, she has worked as a cook, a home-care provider, a casino security officer, and a flagger.  (TR 22.)  She alleges she is no longer able to work because she suffers from long-standing physical and mental impairments.  As explained more fully below, they

include cirrhosis, diabetes, degenerative disc disease, anxiety and depression.  *Id.*
The ALJ acknowledged she suffers from serious physical and mental impairments.
(TR 18.)  The issue is the extent to which Ms. Martinez's impairments limit her
ability to work.  After examining the evidence, the ALJ determined Ms. Martinez is
capable of working either as a casino security officer or as a flagger.  In making that
determination, the ALJ discounted Ms. Martinez's description of her limitations.  (TR
19-21.)  Not only that, but also the ALJ discounted the evaluations of a physician, a
nurse, and a psychologist.  All three had issued pessimistic assessments of Ms.
Martinez's ability to work.  *Id.*  Ms. Martinez disagrees with the ALJ's decision to
discount their assessments.  According to Ms. Martinez, the ALJ failed to provide
adequate reasons for doing so.

**ALJ'S DECISION**

A person is disabled "if [s]he is unable to engage in any substantial gainful
activity by reason of any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or can be expected to last
for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).
The SSA has established a five-step process for evaluating a disability claim.  20
C.F.R. § 416.920(a)(4).  If, at any step, an ALJ can determine the claimant is disabled
(or not disabled), the ALJ will do so.  *Id.*  In that event, the ALJ will not proceed to
the next step.  *Id.*  The process is complete.

Order ~ 3

## A. Step One

At step one, Ms. Martinez had to show she is not engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i).  The term "[s]ubstantial gainful activity means work that . . . [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 416.910. The ALJ found she has not engaged in any substantial gainful activity since November 1, 2011, which is the date upon which disability allegedly began.  (TR 12.)

## B. Step Two

At step two, Ms. Martinez had to show she has "a severe  medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement[.]" 20 C.F.R. § 416.920(a)(4)(ii).  An impairment is "severe" if it "significantly limits" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).  The ALJ found Ms. Martinez suffers from a number of severe physical and mental impairments, *viz.*, "degenerative disc disease of the cervical spine, chronic liver disease and cirrhosis, diabetes, osteoarthritis and allied disorders, an affective disorder, and an anxiety-related  disorder." (TR 12.)

## C. Step Three

At step three, the ALJ considered whether Ms. Martinez's impairments are so severe she is conclusively presumed to be disabled. *See Reddick v. Chater*, 157 F.3d

715, 721 (9th Cir.1998). Resolution of the issue turns upon whether Ms. Martinez

has any impairment, or combination of impairments, that equals an impairment that is

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(a)(iii),

416.925(a). See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th

Cir.2004). SSA regulations state:

> The Listing of Impairments (the listings) is in appendix 1 of subpart P of
> part 404 of this chapter. For adults, it describes for each of the major
> body systems impairments that . . . [the SSA considers] to be severe
> enough to prevent an individual from doing any gainful activity,
> regardless of his or her age, education, or work experience.

20 C.F.R. § 416.925(a). "When a claimant meets or equals a listing, 'he is presumed

unable to work and is awarded benefits without a determination whether he actually

can perform his own prior work or other work.'" *Kennedy v. Colvin*, 738 F.3d 1172,

1176 (9th Cir.2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885,

107 L.Ed.2d 967 (1990)). The claimant bears the burden of proof at step three.

*Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir.2012). The ALJ decided Ms.

Martinez failed to establish a conclusive presumption of disability.

### D. Step Four

At step four, the ALJ evaluated whether Ms. Martinez can perform her "past

relevant work" given her "residual functional capacity." 20 C.F.R. §

416.920(a)(4)(iv). The SSA defines "past relevant work" as work that "was done

within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." 20 C.F.R. § 416.965(a). Ms. Martinez's residual functional capacity ("RFC") is the most she can do in a work setting despite her physical and mental limitations. 20 C.F.R. § 416.945(a)(1). In assessing Ms. Martinez's RFC, the ALJ had to consider "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Among other things, the ALJ considered her testimony and the records that were admitted into evidence (which included the observations of a number of health care providers and mental health professionals). (TR 17-21.) The ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift up to 20 pounds occasionally, lift or carry up to 10 pounds frequently, stand or walk for approximately 6 hours per eight hour day and sit for approximately 6 hours per eight hour day with normal breaks; pushing or pulling is limited to 20 pounds; she can occasionally climb ramps or stairs; never climb ladders ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; perform occasional overhead reaching and frequent fingering; she should avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, pulmonary irritants such as flumes, odors, and gases and workplace hazards such as dangerous machinery and unprotected heights; she can perform relatively unskilled or low semiskilled jobs and well learned tasks, not to exceed an SVP three.

(TR 17.)  This is Ms. Martinez's RFC.  Having made this determination, the ALJ had to complete the Step-Four analysis by deciding whether Ms. Martinez can perform her past relevant work.  A vocational expert addressed this issue at the administrative hearing.  She opined that, in light of Ms. Martinez's RFC, she is capable of working as either a casino security officer and a flagger.  (TR 53.)  The ALJ credited the vocational expert's opinion, finding Ms. Martinez is capable of performing some past relevant work.  (TR 22.)  The ALJ's finding was dispositive.  A person who is capable of performing past relevant work is not disabled.  *Id.*  Given this determination, it was unnecessary for the ALJ to proceed to Step Five, and she did not do so.

**STANDARD OF REVIEW**

A district court has "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  However, review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"  *Id.*  As a result, the Commissioner's decision "will be disturbed only if it is not supported by substantial evidence or it is based on legal error."  *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir.1986).  "Substantial evidence" means more than a mere scintilla, . . . but less than a preponderance."  *Desrosiers v.*

*Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir.1988) (internal

punctuation and citations omitted).

**PLAINTIFF'S OBJECTIONS**

Ms. Martinez insists the ALJ's Step-Four analysis is flawed.  It was at that step

the ALJ determined her residual functional capacity (*i.e.*, the most she can do in a

work setting despite her physical and mental limitations).  See 20 C.F.R. §

416.945(a)(1).  As observed earlier, the ALJ discounted Ms. Martinez's testimony

and the opinions of several professionals who had submitted pessimistic assessments

of her ability to work.  Ms. Martinez alleges the ALJ failed to provide adequate

reasons for discounting the disputed evidence.

**MS. MARTINEZ**

Ms. Martinez testified she suffers from chronic pain.  (TR 39-43.)  The ALJ

discounted her testimony in that regard because there were instances in which she did

not complain of pain to a health care provider.  Ms. Martinez challenge's the ALJ's

reasoning.  While Ms. Martinez concedes she did not report pain on every visit to a

health care provider, she notes there were many occasions on which she was driven to

a hospital by severe, unrelenting pain.  As she sees it, the fact her pain may occur

intermittently does not mean either that it is insignificant or that it is not disruptive.

The standard for evaluating a claimant's credibility is well established.  Where,

as here, there is no evidence of malingering, "the ALJ may reject the claimant's

testimony regarding the severity of her symptoms only if [the ALJ] makes specific findings stating clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir.1996). Had Ms. Martinez reported that she suffered from intermittent pain, her objection to the ALJ's treatment of her testimony would be far more persuasive. However, Ms. Martinez testified she suffers from chronic, debilitating pain. (TR 39-44.) Given the sweeping nature of Ms. Martinez's description of her pain, the ALJ properly noticed there were several instances in which she did not complain of pain to health care providers when one would have expected her to have done so had she been experiencing the excruciating pain she described during her testimony.

Two other circumstances appear to have figured in the ALJ's decision to discount Ms. Martinez's testimony. One was her failure to comply fully with the treatment prescribed by her physicians. Ms. Martinez has diabetes. It is imperative she take insulin, and yet, there have been extended periods when she has failed to do so. Ms. Martinez acknowledges as much, but she insists the lapse may have been the result of an impaired memory. She submits the ALJ should have investigated this possibility.

Another circumstance that figured in the ALJ's assessment of Ms. Martinez's credibility was the fact she did not seek mental health treatment until the State of Washington's Department of Social and Health Services notified her she had to start

treatment in order to continue receiving state-funded benefits.  Ms. Martinez argues her failure to seek mental-health treatment should not be held against her.  As she points out, mental illness can have a paralyzing effect.  This is a phenomenon the Ninth Circuit has recognized.  *Cf. Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996) (an ALJ should be slow to "'to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation'" (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989))).

Ms. Martinez makes a number of important points in her memoranda.  Without question, an ALJ must proceed with caution when considering a claimant's failure to comply with the treatment her physician has recommended; just as an ALJ must proceed with caution when considering a claimant's failure to seek mental-health treatment.  In this case, the ALJ appears to have respected the need for caution.  While she cited Ms. Martinez's failure to take insulin at various times, and while she cited the prompting Ms. Martinez received from the Department of Social and Health Services, the ALJ does not appear to have assigned undue weight to circumstances.  Rather, she considered those circumstances in light of the record as a whole as she evaluated Ms. Martinez's credibility.

Reasonable people may disagree with respect to the ALJ's to discount Ms. Martinez's testimony regarding chronic pain  Nevertheless, as the ALJ observed, the record reflects Ms. Martinez's reports of pain were inconsistent.  On some occasions

she reported severe pain; on others she did not.  The inconsistency in her reporting of pain tends to undermine her allegation she suffers from chronic pain.  Thus, the ALJ had a factual basis for discounting Ms. Martinez's testimony.  While the evidence upon which the ALJ relied may not satisfy a preponderance-of-the evidence standard, it is more than a mere scintilla of evidence, which is what the relevant statute requires to uphold an ALJ's findings.  *See Desrosiers*, 846 F.2d at 576.

**MARY PELLICER, M.D.**

The State of Washington's Disability Determination Services arranged for Dr. Pellicer to examine Ms. Martinez.  The examination took place on May 22, 2012.  Dr. Pellicer was pessimistic.  She concluded Ms. Martinez's physical impairments would sharply limit her ability to function in a workplace.  (TR 289.)  For example, Dr. Pellicer wrote that Ms. Martinez would be unable to stand for long periods of time.  She would be unable to lift, carry or bend, and she would need frequent breaks.  Id. The ALJ discounted Dr. Pellicer's assessment of Ms. Martinez's physical limitations. In essence, the ALJ provided three reasons:  (1) her lumbosacral x-rays were normal; (2) she exhibited virtually undiminished strength in her extremities; and (3) she reported being able to perform basic household chores, including making beds and mowing the lawn.  (TR 20.)

Ms. Martinez alleges the ALJ's explanation is inadequate.  As Ms. Martinez points out, Dr. Pellicer was an examining physician.  *See Lester v. Chater*, 81 F.3d

821, 830 (9th Cir.1995).  The fact Dr. Pellicer examined Ms. Martinez means her

assessment is entitled to considerable weight.  The ALJ was authorized to discount

the assessment only if the ALJ stated clear and convincing reasons for doing so.

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir.1999).  In

Ms. Martinez's opinion, the ALJ's reasons for discounting Dr. Pellicer's assessment

are neither clear nor convincing.  To begin with, Ms. Martinez maintains the x-rays

were inconclusive.  Some parts of her spine appeared normal in the x-rays; other parts

displayed degenerative change.  Next, Ms. Martinez maintains the ALJ placed

unwarranted emphasis on the existence of strength in her extremities.  According to

Ms. Martinez, Dr. Pellicer was aware of the strength she possessed and yet her

assessment was pessimistic.  Finally, there is the matter of household chores.  Ms.

Martinez maintains that none of the reported activities requires significant lifting,

bending, or carrying.

 The defendant argues the ALJ's decision to discount Dr. Pellicer's proposed

limitations was appropriate.  The defendant focuses upon the limitations Dr. Pellicer

proposed.  Some of them -- *e.g.*, no lifting, carrying or bending -- are extreme.  It is

difficult to square such limitations with some of the activities Ms. Martinez said she

was able to perform.  For example, on or about March 28, 2012, Ms. Martinez

submitted a report indicating she was capable of performing certain household

chores.  The chores included "cleaning, laundry, mowing, dishes."  (TR 200.)

Contrary to Ms. Martinez, all of the listed activities typically involve some lifting, carrying or bending.  For example, operating a lawn mower can be a fairly demanding activity.  Much depends, of course, upon the type of lawn mower and the size of the lawn.  Nevertheless, a person who can mow a lawn should be able to do some lifting, carrying, or bending.  The same is true of a person who can clean her house, do her laundry, and wash dishes.  That being the case, says the defendant, the limitations that Dr. Pellicer recommended were inconsistent with the activities Ms. Martinez reported, and, in defendant's opinion, it was entirely proper for the ALJ to consider the inconsistency when weighing Dr. Pellicer's recommendations.  All the more so, says the defendant, given the undisputed strength in Ms. Martinez's extremities.  Finally, there is the fact the x-rays of the lumbosacral vertebrae did not reveal degenerative disc disease.  While the x-rays of two cervical vertebrae did reveal "degenerative changes," the degeneration did not appear to be "acute or severe."  (TR 20.)  The ALJ was surprised Dr. Pellicer did not address the equivocal nature of the spinal x-rays.

The ALJ's written opinion reflects a careful review of the record.  In the end, she could not reconcile Dr. Pellicer's pessimistic assessment of Ms. Martinez with either the unexplained results of the spinal x-rays, or with Ms. Martinez's undisputed strength in her extremities, or with the activities she reportedly engaged in.  Granted, the ALJ is not a physician -- Dr. Pellicer is.  That said, an Administrative Law Judge

is charged with the responsibility of reviewing medical evidence.  Here, the ALJ

engaged in deferential review, but she was troubled by the inconsistences she

observed.  She could not reconcile Dr. Pellicer's conclusion with the evidence as a

whole.  Since the inconsistencies that troubled the ALJ are present in the record, and

since the ALJ's concerns are supported by substantial evidence, she had a clear and

convincing basis for discounting Dr. Pellicer's conclusion.

### JULIET CAPP, ARNP

Juliet Capp is an Advanced Registered Nurse Practitioner who provided basic

medical care to Ms. Martinez.  She submitted two reports during the fall of 2012

concerning Ms. Martinez's physical limitations.  (TR 308; TR 321.)  The ALJ

discounted important parts of both reports.  ARNP Capp prepared the first of the two

reports during September of 2012.  She was aware of the evaluation Dr. Pellicer

performed four months earlier and she cited it with approval.  (TR 322.)  However, in

contrast to Dr. Pellicer, she opined during September that Ms. Martinez was capable

of performing "medium work," which includes lifting up to 50 pounds.  (TR 323.)

The ALJ noted the inconsistency between Dr. Pellicer's assessment and ARNP

Capp's.  (TR 21.)  In view of the ARNP Capp's determination that Ms. Martinez

could perform medium work, the September assessment is of little use to Ms.

Martinez.  The November assessment is much more helpful.  In it, ARNP Capp

opined Ms. Martinez is limited to "[l]ess than sedentary work."  (TR 309.)  The ALJ

was unpersuaded.  "I discount her opinion," wrote the ALJ, "based on the objective medical evidence, the claimant's activities, and evidence that the claimant tends to overstate her symptoms as discussed above."  (TR 21.)  As Ms. Martinez points out, this statement is vague.  One must review other sections of the ALJ's opinion in order to understand what she meant.

ARNP Capp examined Ms. Martinez on a number of occasions during 2012 and 2013.  Several aspects of those examinations are worth noting.  During January of 2013, ARNP Capp reported Ms. Martinez "was well-developed, well-nourished, healthy appearing, and in no apparent distress."  (TR 14. )  The same was true during July of that year.  Id.  Given the absence of distress during the January and July examinations, the ALJ properly questioned whether ARNP Capp's pessimistic assessment of November of 2012 was supported by objective medical evidence.

The ALJ had at least one other reason to question ARNP Capp's pessimistic assessment; namely, she relied heavily upon Ms. Martinez's description of symptoms and Ms. Martinez had a tendency to overstate her symptoms.  Ms. Martinez's complaints of chronic pain are instructive.  As the ALJ noted, Ms. Martinez suffers from medical conditions that can produce severe pain, and Ms. Martinez insists she must cope with chronic pain.  However, on a number of occasions, she did not report pain to the medical health professional who was examining her.  (TR 19.)  One would have expected, observed the ALJ, that a person who is experiencing severe pain

would report the pain to her physician.  (TR 19.)  The fact Ms. Martinez did not

report pain to health care providers during the course of at least two examinations

suggests her pain is not chronic; that is to say, she has a tendency to overstate her

symptoms.  Given such a tendency, especially when combined with the existence of

examinations in which Ms. Martinez appeared to be doing reasonably well, it was

appropriate for the ALJ to discount ARNP Capp's pessimistic assessment.  Ms.

Martinez complains the ALJ's explanation is vague, but her criticism is unfair.  When

one looks at the ALJ's opinion as a whole, one can identify the reasons she relied

upon.  They are rooted in the record, and they rest upon substantial evidence.

**AARON BURDGE, Ph.D.**

Psychologist Aaron Burdge performed an evaluation on September 13, 2012.

He diagnosed depression and anxiety.  (TR 329.)  He determined Ms. Martinez's

psychological problems would limit her ability to function in the workplace.  (TR.

29-30.)  The ALJ discounted Dr. Burdge's assessment because he relied heavily upon

Ms. Martinez's description of her symptoms (a description the ALJ thought was

unreliable) and because Ms. Martinez apparently responded successfully to

counseling during 2013.  (TR 21.)  Ms. Martinez objects to the ALJ's treatment of

Dr. Burdge's assessment.  She notes, correctly, that a psychological evaluation will

almost invariably depend upon information that is supplied by the patient and that

psychologists are trained to evaluate the information their patients provide.

Furthermore, Ms. Martinez insists the ALJ overstated the extent to which she

recovered from depression and anxiety.  The defendant disagrees.  She cites a

progress note that was prepared by a therapist at Central Washington Comprehensive

Mental Health on July 12, 2013.  The therapist wrote, "Donna's depression is

improving her [sic] PHQ-9 as [sic] decreased by 9 points."  (TR 445.)  In view of Ms.

Martinez's progress in therapy, the ALJ had a reasoned basis for discounting Dr.

Burdge's pessimistic assessment.

**CONCLUSION**

Ms. Martinez's request for disability benefits is a close call.  A different ALJ

might have reached the opposite result on the same record.  However, that does not

mean the Court can, much less should, reverse her decision.  A reviewing court

should not substitute its assessment of the evidence for the ALJ's.  *Tackett v. Apfel*,

180 F.3d 1094, 1098 (9th Cir.1999).  To the contrary, a reviewing court must defer to

an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. §

405(g).  While the evidence in this case is not overwhelming, the Court is satisfied

the ALJ offered clear and convincing reasons for her ruling.

\* \* \*

**IT IS HEREBY ORDERED**:

1. The plaintiff's motion for summary judgment (**Ct. Rec. 12**) is **denied**.

2. The defendant's motion for summary judgment (**Ct. Rec. 14**) is **granted**.

**IT IS SO ORDERED**.  The District Court Executive is hereby directed to file this Order, enter judgment accordingly, furnish copies to counsel, and close the case.

**DATED** this 17th day of December, 2015.


<u>s/Fred Van Sickle</u>
FRED VAN SICKLE
Senior United States District Judge